IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  1:08-cv-00904-RPM

MARY ELLEN BOHNEN, individually, as Trustee and Beneficiary of the EILEEN RITA CURE TRUST, and as Trustee/Personal Representative and Heir of the ESTATE OF ERNEST RICHARD CURE

   Plaintiff,

v.

KENNEDY AND COE, LLC. and WILLIAM H. JENKINS,

   Defendants.

_____

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT**

_____

Plaintiff, Mary Bohnen, by her attorney, William R. Gray of PURVIS • GRAY, LLP, responds as follows to Defendants' second motion for summary judgment pursuant to Fed.R.Civ.P. 56.  As explicated herein, triable issues of fact exist that bar summary judgment in this matter.

**I. BACKGROUND**

**A. <u>Nature of the case</u>**:  In this case Plaintiff seeks to recover damages she sustained due to acts and omissions that breached contracts with defendants, and for different acts and omissions by defendants that were negligent and breached the standard of care for CPA's that were a proximate cause of Plaintiff's damages.

**B. <u>This is Defendants' second motion for summary judgment on the same grounds</u>:** The first, filed on August 6, 2008, was denied by this court at the Scheduling Conference held on August 8, 2008.  At that time the Court discussed the prior motion with counsel, heard summary statements of counsel about the facts and issues raised by the motion, and stated:

> ...Your motion for summary judgment is denied.  This is a factual case, and
> it has a lot to do with exactly what [Defendant] Jenkins was doing,..."

(Exhibit 1, transcript of proceedings at Scheduling Conference, August 8, 2008, 14:11-13).

Unfazed, Defendants have filed the same motion a second time, restating entire pages word for word from their denied motion in this new motion, with a few words changed and sentences added here and there.  Defendants do not acknowledge that the court previously denied the same arguments.  They do not seek reconsideration or even comment on the court's prior ruling, which is the law of the case, nor do they state any grounds why the law of the case doctrine does not apply to this restated motion.[1]  Nevertheless, Plaintiff will address all arguments on their merits.

## II.    SUMMARY OF RELEVANT FACTS

### A.    Undisputed Facts:

Defendants' Statement Of Undisputed Facts is incomplete.  While Defendants' recitation is accurate as far as it goes, Defendants' list of relatively few of the pertinent Undisputed Facts and their selective citation of the Complaint implies that Plaintiff's claims are limited to these facts, and the Complaint allegations cited.  Not so.  Defendants also fail to acknowledge the numerous disputed facts that exist in this case, which this court recognized in it's earlier ruling that denied most of what is argued again in this motion.  The following is a thorough recitation of undisputed and disputed facts:

1.    Eileen Rita Cure was married to Ernest Cure and was the mother of Mary Bohnen and Mary's siblings, including three sisters.  At the time of her death, Eileen Rita Cure owned 497 shares

---

[1] The present motion also raises two new arguments, namely, that there was no express contract between Defendants and Ernest Cure (Motion, Section III B, pp. 7, 8) and that Defendants did not supply Plaintiff with false information to be used in a business transaction (Motion, Section IV B, pp. 12-15).

of Cure, Inc. (Exhibit 2, Findings of Fact, ¶12).  In accordance with her Will and Trust Agreement, 85 shares were transferred to the Marital Trust established by her will and 412 shares were transferred to her Family Trust.  (Exhibit 2, Findings of Fact, ¶12).  The only assets ever held in the Eileen Rita Cure Family Trust were the 412 shares of common stock of Cure, Inc.  (Exhibit 2, Findings of Fact, ¶12).

2.    At Eileen's death, Ernest Cure held a general power of appointment over the assets held in the Marital Trust. (Exhibit 2, Findings of Fact, ¶13).  If Mr. Cure declined to exercise the general power over the Marital Trust, the assets in the Marital Trust were to be added to the Family Trust and administered pursuant to the provisions of the Family Trust. (Exhibit 2, Findings of Fact, ¶13).

3.    Ernest Cure also held a "limited and special power of appointment" over Eileen's Family Trust that enabled him to appoint all of the Family Trust assets to the benefit of any one or more of his daughters. (Exhibit 2, Findings of Fact, ¶14).

4.    The initial beneficiaries of the Family Trust were Mr. Cure and his four daughters. (Exhibit 2, Findings of Fact, ¶15).  Following Eileen Cure's death on March 27, 1992, Plaintiff and her sisters became the current discretionary beneficiaries of the Family Trust subject to divestment by Ernest Cure if he exercised the limited power of appointment. (Exhibit 2, Findings of Fact, ¶16).

5.    After Eileen Cure's death, Plaintiff and Ernest Cure were the only officers and directors of Cure, Inc. (Exhibit 2, Findings of Fact, ¶20).  The Family Trust, as the owner of 412 shares of stock in Cure, Inc. was a minority shareholder. (Exhibit 2, Findings of Fact, ¶20).  After Eileen Cure's death, Plaintiff Mary Bohnen and Ernest Cure became co-trustees of the Eileen Rita Cure Family Trust.  (Exhibit 2, Findings of Fact, ¶22).

6.    In 1994 and at present, Kennedy and Coe is the largest regional CPA and consulting

firm based in Kansas. (Exhibit 3, Jenkins deposition, 39:23-25; 40:1-5). It was and is one of the top 100 CPA firms in the nation, (Exhibit 3, Jenkins deposition, 40:6-8) employing 75 to 100 accountants, also with paraprofessionals and attorneys on staff and specialized expertise within the firm in the fields of estate planning, law, and tax. (Exhibit 3, Jenkins deposition, 37:19-25;38:1-16). Ernest Cure and Mary Bohnen together first met with Jenkins in December 1994. Defendant Jenkins was the Kennedy and Coe CPA primarily responsible for this engagement. (Exhibit 3, Jenkins Deposition, 26:1-5).

7.      When Ernest Cure and Mary Bohnen came to see Jenkins in December 1994, Jenkins understood that Eileen Cure's estate plan had given Ernest Cure a general power over Eileen's Marital Trust and a limited power of appointment over her Family Trust (Exhibit 3, Jenkins Deposition, 41:15-20) and that Mr. Cure and Plaintiff were co-trustees of the Eileen Rita Cure Trust (Exhibit 3, Jenkins Deposition, 42:1-4). He understood that as co-trustees of the Eileen Rita Cure Trust, Ernest Cure and Mary Bohnen had fiduciary duties. (Exhibit 3, Jenkins Deposition, 42:1-19; 45:20-25). Jenkins also knew that they were officers and shareholders of Cure, Inc., (Exhibit 3, Jenkins Deposition, 44:9-17), and that corporate officers owed fiduciary duties to minority shareholders of a corporation. (Exhibit 3, Jenkins deposition, 46:12-18)

8.      Kennedy and Coe did not document an understanding of the scope and nature of services to be provided other than "...in the form of my memos from meeting with the clients and objectives that came out of those meetings." (Exhibit 3, Jenkins Deposition, 15:2-11).

9.      According to Jenkins' notes, his first meeting with Ernest Cure and Mary Bohnen was on December 28, 1994. (Exhibit 4). Jenkins' notes list 15 subjects that were discussed at this first meeting. (Exhibit 4). The first item on the list states, "Ernie would like to use his limited power

over the family trust to leave every thing to Mary." (Exhibit 4, item 1).

10.    Other topics were discussed at this initial meeting that were related to Ernest Cure's estate planning but required that work be done for Ernest Cure and Mary Bohnen as officers of Cure, Inc., as well. Jenkins' notes document that he gave advice to the officers, Mary Bohnen and Ernest Cure, on corporate matters at their first meeting. Jenkins' notes of this first meeting state, "(T)he house & half section should be for her (Inez') use for life & then to Mary or Cure, Inc. How can we protect the home & possibly ½ section from being consumed with care." (Exhibit 4, item 5). Jenkins' notes also state, "280 acres in CRP now @ 40.00/acre–as grass would rent for 10.00/acre(.)" (Exhibit 4, item 6). (Clarifying note: the 280 acres referred to were owned at the time by Cure, Inc. See Exhibit 6, Rummel letter dated Jan. 17, 1995, ¶ #3. The term "CRP" is an abbreviation of "Conservation Reserve Program"). Jenkins' notes also state, "Benefits to Inez discontinue upon remarriage–Can this be built into a deferred comp. Agreement", (Exhibit 4, item 7) and, "Advised them to have Cure, Inc. build the home + then we would transfer it out to Ernie + Inez." (Clarifying note: Ernest Cure had married Inez after Eileen's death). (Exhibit 4, item10). Another note by Jenkins states, "Ernie wants to change his trust to leave all stock to Mary Bohnen." (Exhibit 4, item 12). Jenkins' last note from the 12/28/94 meeting states, "Give Mary the right to distribute other assets outside Cure Inc. & what Inez gets to her sisters as she decides or all to herself." (Exhibit 4, item 15).

11.    Jenkins was thus aware of the overlapping relationships, obligations and interests that Mary and Ernest had as officers of Cure, Inc., as co-trustees of Eileen Cure's Family Trust and as individuals, and that his advice, acts and transactions impacted the stock, and assets and operations of Cure, Inc. and required acts by its officers.

12.    Jenkins took notes of a second meeting that occurred on January 15, 1995, this time with Ernest Cure only.  (Exhibit 5).  Jenkins' notes of this meeting state that Ernest Cure  "[w]ould like to exercise his power of appointment under the Eileen Cure Trust in favor of Mary only"; "wants to amend his revocable trust to leave all property to Mary Bohnen"; "Ernie is building a house on the N1/2 of 4-8-45 and we will sell the home & land to Ernie in partial satisfaction of the debt owed to Ernie (clarifying note: the debt mentioned was owed by Cure, Inc. to Ernest Cure).  "upon death of Inez all property goes to Mary"; "All property not in Q-Tip goes to Mary outright"; and "We will have Corporation adopt a non-qualified deferred comp. Agreement with money payable @ $2,500/mth to Ernie for life & then to Inez for _life_. (Exhibit 5).  (Emphasis is in original).

13.    The state trial court found that: "Following the 1994 meeting, Jenkins understood that it was Ernest's intent to revise his estate plan in a manner that would eliminate the Petitioners (Mary's three sisters) as potential beneficiaries under his will.  It was further understood by Jenkins that Ernest would exercise his powers of appointment under Eileen's trusts so that all of the property, including the shares of stock in the corporation would pass to Mary."  (Exhibit 2, Findings of Fact, ¶26).

14.     On January 17, 1995, Linda Rummel, a paraprofessional employed by Kennedy and Coe, wrote a letter to Kansas attorney Sidney Reitz summarizing changes Ernest Cure wanted to make for himself and his deceased wife and requested that Reitz prepare documents  to facilitate the changes.  Rummel also listed other tasks to be accomplished, some of which required action by Cure, Inc.'s officers, including construction of a home at Cure, Inc.'s expense and adoption of a deferred compensation agreement by Cure, Inc.  Rummel's letter lists Mary Bohnen and Ernest Cure as having been sent copies of this letter.  (Exhibit 6, p. 2).

15.     Reitz drafted documents and forwarded them to Jenkins with a cover letter on January 27, 1995. One of the documents Reitz sent was a "...proposed Second Supplemental Trust Agreement." (Exhibit 7, first paragraph). Reitz' letter explains correctly and in detail what each document contained. Another document Reitz sent required the signatures of Cure, Inc.'s officers, a warranty deed whereby Cure, Inc. would convey real estate it owned to the Ernest Richard Cure Trust. (Exhibit 7, p. 5, item B). Reitz' letter included a deferred compensation agreement between Cure, Inc. and Ernest Cure that had provisions benefitting Ernest's wife, Inez, after Ernest's death. (Exhibit 7, p. 6, item D).

16.     Jenkins testified that to the best of his knowledge there was never any telephone call, correspondence or communication, face to face or otherwise, between Reitz and Ernest Cure. (Exhibit 3, Jenkins Deposition, 49:7-12). Jenkins testified that this was a typical situation where an estate planning client of Kennedy and Coe wanted to have documents drafted, Hampton & Royce would draft the documents pursuant to instruction from Kennedy and Coe, and would send those documents to Kennedy and Coe for execution. (Exhibit 3, Jenkins deposition, 88:14-25, 89:1). Jenkins saw the Will and Trust Agreement that came with Reitz' letter that explained what he had done, but Jenkins did not read the documents. (Exhibit 3, Jenkins Deposition, 50:5-12). He does not know if he even read Reitz' letter. (Exhibit 3, Jenkins Deposition, 65:13-18). Without reading the Will or the Trust Agreement, Jenkins nevertheless explained to Ernest Cure what he "...thought they contained." (Exhibit 3, Jenkins deposition, 65: 19-25; 66:1-14). This occurred at the time Ernest Cure executed the Will. (Exhibit 3, Jenkins deposition, 68:22-25, 69:1-3). The date was January 31, 1995.

17.     A major discrepancy existed between what Ernest Cure repeatedly told Jenkins he

wanted to achieve with his Will and what the Will actually provided.  The letter from Linda Rummel stated that Mr. Cure wanted to exercise his power of appointment under the Eileen Rita Cure <u>Family</u> Trust to appoint all the principal to his daughter, Mary Ellen Bohnen.  What Reitz sent were documents which, as he explained in his letter, provided that any property remaining in the Eileen Rita Cure <u>Marital</u> Trust at the time of the death of Ernest Cure will be paid and distributed to Mary Bohnen.  (Exhibit 7, p. 4, ¶ A.(i)).

18.    In 2000, Jenkins had a conversation with Mary Bohnen, who informed Jenkins that her father wanted to be certain that his Will was "bullet-proof," and could not be undone by her sisters.  (Exhibit 3, Jenkins Deposition, 69:20-24).

19.    Jenkins contacted a Colorado estate planning attorney, James R. Wade, on behalf of Mr. Cure.  In a cover letter to Wade dated April 25, 2000 Jenkins listed information he had available for review, including Mr. Cure's 1995 Will.  In this letter, Jenkins informed Wade that Mr. Cure's January 31, 1995 Will contained a provision whereby at death Mr. Cure exercised his power of appointment over the Marital Trust of Eileen Cure. (Exhibit 8).   Jenkins again failed to do adequate preparation and failed to identify the fact that the power of appointment Ernest Cure intended to exercise in his 1995 Will was his power of appointment over the Eileen Rita Cure Family Trust, not the Marital Trust.

20.    In another letter to Wade dated May 8, 2000, Jenkins erroneously reported to Wade that the Eileen Rita Cure Marital Trust owned 412 shares of stock in Cure, Inc. with a net value of $768,083.  (Exhibit 9).  In fact, these shares had been held all along by the Eileen Rita Cure Family Trust.  (Exhibit 9).  Jenkins admitted in his deposition that he did not meet the standard of care for CPAs in the preparation of his May 8, 2000 letter to Wade.  (Exhibit 3, Jenkins Deposition, 72:8-

77:6).

21.     Jenkins' notes dated October 15, 2000 show that he discovered the error regarding which trust held the stock in Cure, Inc.  In this note the word "Marital" is circled, with the word "Family" written in above. (Exhibit 10).  In his deposition Jenkins explained his practice in making corrections via such entries, that circling a word means the word is wrong, and he writes the correct word above the circled word.  (Exhibit 3, Jenkins Deposition, 78:18-25 to 80:1-23).  This October 15, 2000 note shows that Jenkins detected the error in Ernest's 1995 Will prior to the Wade-drafted will being executed, yet Jenkins testified that he cannot recall ever conveying this crucial information to Wade.  (Exhibit 3, Jenkins Deposition, 81:3-82:2).  Jenkins admits that his failure to report this information to Wade did not meet the standard of care for CPA's.  (Exhibit 3, Jenkins Deposition, 82:3-12).

22.     Kennedy and Coe's operating practices recognized that Cure, Inc.'s officers, Ernest Cure and Mary Bohnen, wore several hats simultaneously.  If someone working on Cure, Inc.'s tax return, or doing work for Ernest Cure, or Mary Bohnen or another related person or business entity needed to review any documents from files of one that could answer questions about others they were free to review those files and collect the information needed.  (Exhibit 3, Jenkins deposition, 29:9-19).  Kennedy and Coe paraprofessional, Linda Rummel, also testified that if Kennedy and Coe was doing tax work for Cure, Inc. it would not by unusual or improper to look into one or more of the files of related persons such as Ernest Cure, Mary Bohnen or other related businesses or individuals to answer questions that might assist in preparing a return for Cure, Inc.  (Exhibit 11, Rummel deposition, 18:17-25; 19:1-2).

23.     Jenkins testified that he knew Ernest Cure and Plaintiff were co-trustees of the Eileen

Rita Cure Trust.(Exhibit 3, Jenkins Deposition, 42:1-4).  Jenkins also knew that Ernest Cure and Plaintiff were the officers of Cure, Inc.  (Exhibit 3, Jenkins Deposition, 44:9-17).   Jenkins understood that in their roles with Cure, Inc. and with the Eileen Rita Care Trust, Ernest Cure and Plaintiff had fiduciary duties to Plaintiff's sisters. (Exhibit 3, Jenkins Deposition, 42:1-19; 45:20-25).  Nevertheless, Jenkins did not advise them of their fiduciary duties, believing that although he believed they did have fiduciary duties, Mary was to receive everything so there would be no beneficiaries to challenge or be concerned about fiduciary roles.  (Exhibit 3, Jenkins deposition, 41:15-25; 42:1-25; 43:1-25; 44:1-8).

**B.     Disputed Facts**

24.     Jenkins and his firm undertook professional services that he could not expect to be completed with professional competence, in violation of AICPA standards, when he provided services which should have been provided by an attorney.  (Exhibit 12, p. 8, item A).

25.     Jenkins and his firm failed to exercise due professional care in rendering professional services to Ernest Cure and to Mary Bohnen in her various capacities, in violation of AICPA standards.   (Exhibit 12, p. 8, item B).

26.     Jenkins and his firm failed to adequately plan and supervise the performance of professional services, including the preparation of Cure, Inc.'s tax returns for the years 1994 through 2001, in violation of AICPA standards.   (Exhibit 12, p. 8, item C).

27.     Jenkins and his firm failed to obtain sufficient, relevant data to afford a reasonable basis for conclusions or recommendations in relation to professional services performed, in violation of AICPA standards.   (Exhibit 12, p. 8, item D).

28.     Numerous operating expenditures by Cure, Inc. over the years 1995 to 2002 were

assessed as damages against Mary Bohnen by the state trial court in the breach of fiduciary duty case that were caused by negligent advice, acts, omissions and breaches of duty by Kennedy and Coe in failing to advise her concerning her ongoing fiduciary duties to her sisters.  The following examples are not exhaustive, merely illustrative of some of the disputed facts in this case:

(a)   Miscellaneous expenses of $4,339 (Exhibit 2, Findings of Fact, etc., ¶114), addressed in Exhibit 13, Mary Bohnen deposition Jan.8, 2009, 16:18-25; 17:1-14;

(b)   $2,614 in fees paid by Cure, Inc. for preparation of Ernest Cure's Will and deferred compensation agreement (Exhibit 2, Findings of Fact, etc., ¶117), addressed in Exhibit 13, Mary Bohnen deposition Jan. 8, 2009, 21:2-21;

(c)   $49,156 for repairs and expenses (Exhibit 2, Findings of Fact, etc., ¶118), addressed in Exhibit 13, Mary Bohnen deposition Jan. 8, 2009, 21:22-25; 23:1-10;

(d) $38,727 in credit card charges by Ernest Cure that were paid by Cure, Inc., for which Mary Bohnen was held financially responsible (Exhibit 2, Findings of Fact, etc., ¶119), addressed in Exhibit 13, Mary Bohnen deposition Jan. 8, 2009, 22:14-24;

(e) $17,031 expended by Cure, Inc. for fuel and oil for vehicles (Exhibit 2, Findings of Fact, etc., ¶120) addressed in Exhibit 13, Mary Bohnen deposition Jan.8, 2009, 22:25; 23:1-25; 24:1-7; Mary Bohnen clarifies that all these expenditures were for Ernest Cure, none were for her. (Exhibit 13, Mary Bohnen deposition, 23:20-24).

(f) $33,475 in improper charitable contributions to a school her father favored (Exhibit 2, Findings of Fact, etc., ¶121), addressed in Exhibit 13, Mary Bohnen deposition of Jan. 8, 2009, 24:13-25; 25:1-6;

(g) $15,000 in deferred compensation payments to Inez Cure (Exhibit 2, Findings

of Fact, etc., ¶122), addressed in Exhibit 13, Mary Bohnen deposition, 26:20-25;27:1-11.  Jenkins advised Ernest Cure and Mary Bohnen that this very deferred compensation agreement should be adopted by Cure, Inc. at his December 28, 1994 meeting with Ernest Cure and Mary Bohnen.

(h) Judgment also entered against Mary Bohnen for the litigation costs and attorneys fees incurred by her three sisters in both state court cases due to her breaches of fiduciary duty.  The award of her sisters' attorneys fees alone was over $495,000. (Exhibit 14).  Mary also incurred attorneys fees and litigation costs of her own that were in excess of $450,000 in defending herself against the breach of fiduciary duty claims of her sisters and in the Reformation case in efforts to correct the harm caused by Jenkins and Kennedy and Coe.  (Exhibit 13, Mary Bohnen deposition on 01/08/09, 33:21-25; 34:1-4.).

29.    For tax years 1998 through 2000 Kennedy and Coe incorrectly reported on Cure, Inc.'s tax return, Schedule K of Form 1120, that Mr. Cure owned 50% and Plaintiff Mary Bohnen owned 50% of the corporation's voting stock. (Exhibits 15, 16, and 17).  For tax year 2001, despite no change whatsoever in Cure, Inc. stock ownership, Kennedy and Coe reported on Schedule K of Form 1120 (again, erroneously) that Ernest Cure owned 74% of Cure, Inc. stock and that Mary Bohnen owned 26%.  It was not until Kennedy and Coe completed the 2002 Cure, Inc. tax return after Ernest Cure's death and after the true facts were finally discovered, that Kennedy and Coe correctly reported on Cure, Inc.'s tax return, Schedule K of Form 1120, that the ownership of Cure, Inc. was Ernest Cure 44%, Mary Bohnen 26%, and the Family Trust 30%. (Exhibit 18).

**III.    <u>STANDARD OF REVIEW</u>**

Summary judgment is proper only if there is no genuine issue of material fact for determination, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c);

*Riley v. Brown & Root, Inc.*, 896 F.2d 474, 476 (10th Cir. 1990).  The party moving for summary judgment has " 'the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party.' " *Brown v. Parker-Hannifin Corp.,* 746 F.2d 1407, 1411 (10th Cir.1984) (quoting *Adickes v. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970)); *see also* 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2716, at 643 (1983).  The movant must demonstrate entitlement to summary judgment beyond a reasonable doubt, and summary judgment is inappropriate if an inference may be drawn from the facts by which the nonmovant might recover. *E.g., Brown,* 746 F.2d at 1411; *Mustang Fuel Corp. v. Youngstown Sheet and Tube Co.,* 516 F.2d 33, 36 (10th Cir.1975).

## IV.    ARGUMENT

### A.    The Law Of The Case Applies To The Present Motion.

Under the law of the case doctrine, findings made at one point during litigation become the law of the case for subsequent stages of that same litigation.  *United States v. Webb*, 98 F.3d 585, 587 (10th Cir.1996).  Courts use "law of the case" to promote decisional finality and rely on it to prevent relitigation of an issue already decided in prior proceedings of the same case.  *In re Meridian Reserve, Inc. (Octagon Resources, Inc. v. Bonnett Resources Corp.)*, 87 F.3d 406, 409 (10th Cir.1996).  Generally, "once a court decides an issue, the same issue may not be relitigated in subsequent proceedings in the same case."  *Grigsby v. Barnhart*, 294 F.3d 1215, 1218 (10th Cir.2002).

The law of the case doctrine is subject to three exceptions:

"(1) When the evidence in a subsequent trial is substantially different; (2) when

controlling authority has subsequently made a contrary decision of the law applicable to such issues; or (3) when the decision was clearly erroneous and would work a manifest injustice."

*Grigsby*, supra, at 1219, n.4.

These exceptions are read narrowly. *United States v. Monsisvais*, 946 F.2d 114, 117 (10th Cir.1991) (requiring district courts to apply the law of the case "...unless one of the exceptions specifically and unquestionably applies.")

While Defendants do not mention the court's prior ruling or these exceptions, none of the exceptions applies. There is no difference in evidence Defendants rely on in their duplicate motions, no contrary decision by controlling authority has been made, and no basis exists to support the contention that this Court's earlier decision was clearly erroneous. Nevertheless, Plaintiff will address each point raised by Defendants on its merits so there is a full record of disputed facts for the court's review.

**B.        Defendants Have Been Well-Informed Of Plaintiff's Claims and Their Basis.**

F.R.Civ.P., 8(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief;..." Plaintiff complied with this requirement.

In addition to the portions of the complaint Defendants quote in their motion, Plaintiff also pled in her complaint that:

> 22. Between 1995 and 2002, Plaintiff assisted Mr. Cure in managing the business affairs of Cure, Inc. in accordance with what Plaintiff and Mr. Cure believed was the estate plan that Mr. Cure had put in place. During this period, Plaintiff and Mr. Cure also received financial and tax planning advice from Defendants Jenkins and Kennedy and Coe. ...

24.  At no time between 1995 and 2000 did Defendant Jenkins or Defendant Kennedy and Coe advise Plaintiff or Mr. Cure that they owed any fiduciary duties to Plaintiff's sisters as beneficiaries of the Family Trust.   Mr. Cure and Plaintiff conducted the business affairs of Cure, Inc. under the belief, encouraged by Jenkins and Kennedy and Coe, that there were no other persons besides themselves who had any legal or equitable interest in Cure, Inc.

Plaintiff's Statement of Claims in the Scheduling Order is four pages long and provided Defendants with further notice of the claims plaintiff is pursuing and their basis, including the following:

Between 1995 and 2002, Plaintiff assisted Mr. Cure in managing the business affairs of Cure, Inc., in accordance with what was believed to be the estate plan that Mr. Cure had put in place and in reliance upon erroneous accounting advice given to both Ernest Cure and to Mary Bohnen by Jenkins and Kennedy and Coe, that was based upon Jenkins' and Kennedy and Coe's mistaken belief that Plaintiff and Ernest Cure owed no fiduciary duties to her sisters.  During this period, Plaintiff and Mr. Cure also received and relied upon financial and tax planning advice from Defendants, Kennedy and Coe and Jenkins, based upon the advice that they owed no fiduciary duties to Mary Bohnen's sisters.

Scheduling Order, p. 4.

Defendants have thus known since the outset of this case that plaintiff contended their liability was based on a contract for accounting services as to some facts and negligence as to others.  The

15

complaint alone contains 58 separate paragraphs, many of which contain multiple allegations.  More is not necessary to meet notice pleading requirements.

**C.      Jenkins' Notes Show That In 1994 Jenkins Formed An Express Contract With Both Ernest Cure Individually And With Ernest Cure and Mary Bohnen In Their Representative Capacities As Cure, Inc.'s Officers To Perform Specific Accounting and Estate Planning Services.  At A Minimum A Jury Question Exists As To These Issues.**

When parties manifest their agreement by either written or oral words, the contract is generally said to be express. *Tuttle v. ANR Freight System*, Inc. 797 P.2d 825, 829 (Colo.App. 1990).  Contrary to the arguments of Defendants, an express contract need not be in writing.  The cases cited by the Defendants do not require a contract to be in writing for a third-party to be entitled to sue for breach of contract as an intended beneficiary, only that the contract be an express contract.  An express contract need not be in writing. *Tuttle*, 797 P.2d at 829.  Defendants have made an inferential leap that Colorado law does not support.

Colorado courts have distinguished claims of professional negligence from breach of contract claims made against such professionals.  The distinction is based upon the specific promises made in contract.  In *Martinez v. Badis*, 842 P.2d 245, 251-252 (Colo. 1992), the Colorado Supreme Court explained:

> Negligence claims are based on the premise that persons or entities have certain legislatively or judicially recognized general duties toward others and are required to act reasonably to fulfill those duties. *Dare v. Sobule,* 674 P.2d 960, 963 (Colo.1984); *Lembke Plumbing and Heating v. Hayutin,* 148 Colo. 334, 337, 366 P.2d 673, 675 (1961). Breach of fiduciary duty claims are in some, but not all, contexts basically negligence claims incorporating particularized and enhanced duty of care concepts often requiring the plaintiff to establish the identical elements that must be established by a plaintiff in negligence actions. *See* Dennis J. Horan & George W. Spellmire, *Attorney Malpractice: Prevention & Defense* 16-1 (1986).

16

> For example, unless a breach of a fiduciary duty claim is admitted by the defendant, the plaintiff alleging a breach of fiduciary duty arising from the attorney-client relationship must establish by means of expert testimony the applicable standard of care and the defendant's failure to adhere to that standard of care. *Davis v. Margolis,* 215 Conn. 408, 576 A.2d 489 (1990); *Barth v. Reagan,* 139 Ill.2d 399, 151 Ill.Dec. 534, 564 N.E.2d 1196 (1990); *Goebel v. Lauderdale,* 214 Cal.App.3d 1502, 263 Cal.Rptr. 275 (1989); *ABC Trans Nat'l Transp., Inc. v. Aeronautics Forwarders, Inc.,* 90 Ill.App.3d 817, 46 Ill.Dec. 186, 413 N.E.2d 1299 (1980).

> Contract claims are based on the premise that parties may create duties to each other and are required by the common law to act reasonably to perform those mutually agreed upon obligations. *See Cosmopolitan Homes, Inc. v. Weller,* 663 P.2d 1041, 1043 (Colo.1983); *Metropolitan Gas Repair Serv. Inc. v. Kulik,* 621 P.2d 313, 317 (Colo.1981); *Denver Truck Exch. v. Perryman,* 134 Colo. 586, 592, 307 P.2d 805, 810 (1957). The duty to perform mutually agreed upon contractual obligations is not the equivalent of a generally recognized duty of care that forms the essence of negligence claims. *See Covert v. Allen Group, Inc.,* 597 F.Supp. 1268, 1269 (D.Colo.1984).

*Martinez*, 842 P.2d at 251-252.

> In *McLister v. Epstein & Lawrence*, P.C., 934 P.2d 844, 847 (Colo.App. 1996):

> Under Colorado law, a claim based on a violation of duty imposed by the attorney-client relationship sounds in tort. While a claim for breach of the attorney-client contract is cognizable, it must be based on a specific term in the contract. *International Tele-Marine v. Malone & Associates,* 845 F.Supp. 1427 (D.Colo.1994).

*Id.*

Professionals such as accountants who make representations with the knowledge that the information is to be relied on by others may be subject to both tort and contract liability for economic loss if third parties rely on their negligent misrepresentations made in the course of rendering a service pursuant to a contract. *Jardel Enterprises, Inc. v. Triconsultants, Inc.*, 770 P.2d 1301, 1304 -1305 (Colo.App. 1988) (*citing* W. Prosser & W. Keeton, *Torts* §§ 92 and 107 (5th ed. 1984).)

The parties' agreement is evidenced by their manifestations of mutual assent. *See I.M.A., Inc. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882, 888 (Colo. 1986) (*citing* Restatement (Second) of Contracts § 17(1) (1981) ("[t]he formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange...."). Evidence of the parties' conduct, their oral statements and their writings, and other evidence illuminating the circumstances surrounding the making of an agreement are admissible to clarify the intent and purpose of the parties. *I.M.A., Inc.*, 713 P.2d at 888. When the existence of a contract is in issue, and the evidence is conflicting or admits of more than one inference, it is for the jury to decide whether a contract in fact exists. *Id.*, at 887. The existence of a contract in this case is hardly in doubt.

Jenkins testified that the only written documentation of the scope and nature of services that Kennedy and Coe agreed to undertake is contained in his notes. (Exhibit 3, Jenkins Deposition, 15:2-11). Jenkins notes show that he met with Ernest Cure and Mary Bohnen on December 28, 1994. (Exhibit 4), and contain a list of 15 subject areas that were discussed at this meeting. Jenkins' handwritten notes of his early meetings on this matter confirm that there was an express agreement between Jenkins (on behalf of his firm) and Ernest Cure, and that the officers of Cure, Inc. were parties to this agreement.

Jenkins' notes list three things that Jenkins advised Ernest Cure and Mary Bohnen to do as officers of Cure, Inc. as part of the work he undertook, namely: (1) adopt a deferred compensation agreement to benefit Ernest's second wife, Inez (Exhibit 4, item 7); (2) "(A)dvised them..." (emphasis added) to have Cure, Inc. build the home...," and (3) "...then we would transfer it out to Ernie & Inez." (Exhibit 4, item 10, emphasis added).

Judgment entered against Mary Bohnen for $15,000 for breaching her fiduciary duties to her

three sisters by adopting this very deferred compensation agreement to benefit Ernest's second wife, Inez. (Exhibit 2, Findings of Fact, etc, p. 40, item (j)). This finding was part of the basis for the award to Mary's sisters of their attorneys fees and costs for Mary's breach of fiduciary duties in that case and the Will Reformation case, as well as a cause of Mary incurring her own attorneys' fees in both underlying cases.

Since this agreement included advice and work being done on tasks to be done by Ernest Cure and Mary Bohnen as officers of Cure, Inc., Mary Bohnen was a party to this agreement in her representative capacity. Jenkins' notes confirm that there was a meeting of the minds on the tasks Jenkins was to accomplish, and Jenkins' notes refer to having "...advised them...", not just Ernest. (Exhibit 4, item 10). Jenkins' admissions in his deposition testimony, his notes listing the advice he gave Ernest Cure and Mary Bohnen on tasks they needed to do as officers of Cure, Inc., refute Defendants' claim that there is no express contract here.

The January 17, 1995 letter written by Linda Rummel, a paraprofessional employed by Kennedy and Coe, to Kansas attorney Sidney Reitz summarizing changes Ernest Cure wanted to make for himself and his deceased wife additionally confirms the specific tasks Kennedy and Coe and Jenkins had promised to perform. (Exhibit 6, p. 2).

A jury could properly find that Jenkins knew that Plaintiff attended the December 28, 1994 meeting in three capacities–(1) as specific beneficiary of the services Jenkins contracted to provide; (2) as an officer of Cure, Inc. with then existing fiduciary duties to her three sisters, receiving Jenkins' advice to her as an officer about acts she and her father needed to take as officers to implement the estate plan Jenkins was devising, and which would alter and terminate her fiduciary duties then presently owed to her sisters, and (3) as trustee of the Eileen Rita Cure Family Trust,

19

with fiduciary duties to her sisters that were also to be altered and terminated by the estate planning work Jenkins was undertaking. Viewing the evidence in a light most favorable to the Plaintiff, Defendant Jenkins made promises to Plaintiff and Ernest Cure to perform services that impacted Plaintiff in each of these three capacities.

A Jury could properly find that specific promises were made by Defendants Kennedy and Coe and Jenkins to Ernest Cure and Plaintiff which they failed to perform, causing Plaintiff substantial damages. Those promises were admitted to by Defendant Jenkins in his deposition, they are outlined in the notes of Defendant Jenkins, and also are detailed in the letter from Linda Rummel to Reitz.

**D.     Even If She Was Not a Party To The 1994 Express Contract Between Defendants And Ernest Cure, Plaintiff Was A Direct Third Party Beneficiary Of That Contract, In Which Jenkins and Ernest Cure Both Intended To Provide A Specific Benefit To Mary Bohnen Individually.**

A person not a party to an express contract may bring an action on the contract if the parties to the contract intended to benefit the nonparty, provided that the benefit claimed is a direct and not merely incidental benefit of the contract. *Bloom v. Nat'l Collegiate Athletic Ass'n,* 93 P.3d 621, 623 (Colo.App.2004). While the intent to benefit the nonparty need not be expressly recited in the contract, the intent must be apparent from the terms of the agreement, the surrounding circumstances, or both. *Chandler-McPhail v. Duffey*, 194 P.3d 434, 437-438 (Colo.App. 2008). Courts have found complaints to sufficiently allege the existence of an express oral contract. *See Cassidy v. Millers Cas. Ins. Co. of Texas*, 1 F.Supp.2d 1200, 1212 (D.Colo. 1998).

Mary Bohnen asserted in the complaint, *inter alia*, that she is a third party beneficiary of

Ernest Cure's express agreement with Kennedy and Coe to perform estate planning services for her specific benefit. (Complaint, ¶¶ 47-49). Jenkins' notes show, or at a minimum raise a fact question, that Plaintiff was an express, intended beneficiary of the agreement between Ernest Cure and Defendants.

Even if Defendants were correct in their view that express contracts must be in writing and that there is no writing, Defendants would be estopped from denying that the terms of their engagement were in writing. At all material times, Defendants were CPA's. Paragraph 13 of AICPA's Statements on Responsibilities in Personal Financial Planning Practice, (Exhibit 3, also marked as Jenkins deposition exhibit 1) requires that CPA's document an understanding of the scope and nature of the services to be provided, the roles and responsibilities being undertaken, the fee arrangements being put in place and any limitations or other constraints on the scope of the undertakings the CPA is setting out to perform. Jenkins confirmed in his deposition that no engagement letter was prepared by Kennedy & Coe or Jenkins for Cure, Inc., Mary Bohnen, Ernest Cure, that no written record identifies the roles and responsibilities of Kennedy and Coe being undertaken, nothing in writing identified the fee arrangements being put in place for the services being rendered to Cure, Inc., Ernest Cure, Mary Bohnen or anyone else, nor that recites any limitations or constraints on the scope of undertakings that Kennedy and Coe was setting out to perform. (Exhibit 3, Jenkins deposition, 14:15-25; 15:1-25; 16:1-13).

Defendants now contend they should win summary judgment precisely because they did not write an engagement letter, i.e., they should win because they did not comply with AICPA Standards. Equitable estoppel bars such an allegation or proof. Sometimes called estoppel *in pais*, equitable estoppel is a term applied to a situation in which, because of something which he has done

or failed to do, a party is denied the right to plead or prove true facts to the contrary.  As Lord Coke put it, "(i)t is called an estoppel or conclusion, because a man's own act or acceptance stoppeth or closeth up his mouth to allege or plead the truth."  2 Coke, Littleton 352a.

If any confusion exists as to the scope and nature of Jenkins' undertakings, or concerning the tax work, tax avoidance and business operations advice later undertaken by Kennedy and Coe it is a fact question and a problem of their own making, since that they did not prepare any engagement letter that spelled out the services being undertaken, or for whom.

**E.      Negligent Accounting Advice, Services, Acts And Omissions By Jenkins And Kennedy And Coe Occurred In Rendering Their Professional Services To Their Client, Mary Bohnen, Both Individually And As An Officer Of Cure, Inc., Which Caused Her To Incur Damages.**

During the time period circa 1995 through the death of Ernest Cure in late 2002, Kennedy and Coe also rendered accounting services to Mary Bohnen individually by preparing her personal tax returns.  This was a separate engagement from other engagements. (Exhibit 19, Mary Bohnen deposition of October 19, 2006, 92:4-12).  These personal tax returns were separately invoiced. (Exhibit 19, Mary Bohnen deposition of October 19, 2006, 92:24-25, 93:1).  As described elsewhere herein, Kennedy and Coe also prepared tax returns to be signed by officers of Cure, Inc. for tax years 1995 through 2002, and gave ongoing advice to Mary Bohnen and Ernest Cure as officers of the corporation concerning business operations and tax avoidance measures for Cure, Inc.

**1.  Defendants failed to meet the standard of care for professional care for accountants and breached duties they owed to Mary Bohnen.**

When a claimant makes a negligence or fault claim against a professional, that professional

is judged according to the tenets of the field to which he or she belongs. *United Blood Servs. v. Quintana*, 827 P.2d 509, 520 (Colo.1992). The successful claimant will therefore demonstrate that the professional's conduct fell below the standard of care appropriate to the profession. *Redden v. SCI Colorado Funeral Services, Inc.*, 38 P.3d 75, 81 (Colo. 2001). Expert testimony is generally necessary to assist the trier of fact in determining the applicable standards because in most cases such standards are not within the purview of ordinary persons. *Id.* Colorado law requires claimants, as part of a professional negligence claim, to establish the appropriate standard of care. *Id.*

The opinions of Plaintiff's expert CPA, James R. TenBrook are stated in his Affidavit and two reports, a total of 29 pages. In those reports, TenBrook gives precise details of why Jenkins and Kennedy and Coe fell below the standard of care in rendering accounting services for the Plaintiff and Ernest Cure. The following is merely a sampling, not an exhaustive recitation of his opinions:

> the lack of formal procedures for coordinating various client services and the lack of Partner oversight (i.e., that of Mr. Jenkins) resulted in (1) errors in the income tax returns of Cure, Inc., (2) the reliance of Ernest Cure and Mary Bohnen, as officers of Cure, Inc., co-trustees of both Eileen Rita Cure's Marital Trust (Marital Trust) and Family Trust (Family Trust) and as discretionary beneficiaries of the Family Trust on erroneous professional advice and erroneous documents, (3) errors in estate planning documents of Ernest Cure, and (4) the failure of Ernest Cure to have exercised his limited and special power of appointment over the Family Trust.

(Exhibit 12, p. 2).

TenBrook also identifies mistakes made on the tax returns of Cure, Inc. as due to lack of supervision, lack of coordination of client services, and lack of due professional care by the Defendants. (Exhibit 12, pp. 8-9).

The Will prepared by James Wade in 2000 contained the same error as the one that was

executed by Mr. Cure in 1995.  Both are due to flagrant errors by Jenkins.  Jenkins admits, just as he did concerning the 1995 Will, that he did not review the 2000 Will, even though he was aware of it and received copies of it. Jenkins Deposition, 68:12-17.  Mr. TenBrook opines:

> For Mr. Jenkins not to have reviewed the Will and other estate planning documents to insure compliance with the wishes of Ernest Cure and Mary Bohnen and Mr. Jenkins understanding thereof demonstrates in my opinion, a lack of professional due care.  Mr. Jenkins had a long standing client relationship with Ernest Cure and Mary Bohnen, held himself and Kennedy and Coe out as having knowledge and expertise in estate planning, made estate attorney referrals for Ernest Cure and participated in the interface with the estate attorney.  Yet it appears Mr. Jenkins nor anyone else within Kennedy and Coe took the time to read the estate documents prepared in 1995 (in draft form) and again in 2000.  Even after Mary Bohnen and Ernest Cure requested in the year 2000 that Mr. Jenkins insure the Will was "bullet proof" Mr. Jenkins and Kennedy and Coe ignored the legal documents and instead relied upon what they "thought" was to have been.

Exhibit 12, p.13.  Jenkins admits that he did not meet the standard of care for CPAs in the preparation of the May 8, 2000 letter he sent to Mr. Wade. Jenkins Deposition, 72:8-77:6.

**a).  <u>Defendants argument that they had no duty to the Plaintiff in the estate planning and drafting of the Will for Ernest Cure because they are accountants is in error.</u>**

The Defendants cite no case law to support this theory, nor do they comment on Plaintiff's Expert CPA's report which identifies Jenkins' breach of the standard of care for accountants in failing to adhere to the requirement that a CPA undertake only those professional services that they can reasonable expect to be completed with professional competence.  Plaintiff's expert CPA has opined that Jenkins undertook professional services for which he was not qualified.  (Exhibit 12, p. 8, item A).

The legal theory the Defendants advocate would obliterate any liability for undertaking

professional services for which they are not qualified, and would, in effect, place the burden on the Plaintiff to determine when an accountant crosses the line into giving advice and services they are not qualified to render. As TenBrook explains, AICPA Standard 201 of the General Standards of AICPA's Code of Professional Conduct places the burden on accountants to refrain from engaging in delivering professional services that are outside their area of competence. (Exhibit 12, p. 8, item A ).

Defendants' assertions concerning the scope of their engagements regarding Ernest Cure's estate planning are far too narrow. Throughout these two estate planning engagements, concerning Ernest's 1995 Will and later concerning his 2000 Will, Kennedy and Coe simultaneously represented Ernest Cure individually, Mary Bohnen individually, and Ernest and Mary as officers of Cure, Inc. Kennedy and Coe and Jenkins knew that Ernest and Mary owed fiduciary duties both as officers of Cure, Inc. and as Trustees of the Eileen Rita Cure Family Trust to all shareholders of Cure, Inc. and all beneficiaries of the Family Trust. Jenkins testified that he did not advise them of their fiduciary duties believing that, although he believed they did have fiduciary duties, Mary was to receive everything in Ernest's estate planning so there would be no beneficiaries to challenge or be concerned about fiduciary roles. (Exhibit 3, Jenkins deposition, 41:15-25; 42:1-25; 43:1-25; 44:1-8).

"The determination that a duty does or does not exist is an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is or is not entitled to protection." *Ryder v. Mitchell*, 54 P.3d 885, 889 (Colo. 2002). In *Ryder*, the Colorado Supreme Court explained how the existence of a duty should be determined:

The court should base its determination on several factors including: the risk

involved, the foreseeability and likelihood of injury as weighed against the social utility of the defendant's conduct, the magnitude of the burden of guarding against the harm, and the consequences of placing the burden of a duty on the defendant. Colorado law recognizes that these factors are not exclusive and allows a court to consider any other relevant factors founded on the competing individual and social interests implicated by the particular facts of the case at issue. Because no one factor controls the analysis, the question of whether a duty exists in a certain situation is based on fairness under contemporary standards-that is, would reasonable persons recognize and agree that a duty of care exists.

*Ryder*,  54 P.3d at 890 (citations omitted.)

Defendants suggest that Plaintiff seeks to impose a duty on Defendants that would require Defendants to commit an unlawful act.  This is not so.  Plaintiff contends that, in accord with AICPA Standards, Defendants had a duty confine their advice and services to areas within their area of professional expertise.  Professional interface is common between the accounting and legal professions.  It is the professionals who are required to manage those boundaries to meet their duty of care, not the client.  A professional who renders advice and services outside their area of expertise has no safe harbor because he did so.

**b.  <u>Defendants gave advice and counseled acts that carried a forseeable risk of harm to Mary Bohnen individually if they failed to take action to prevent injury.</u>**

It has been long recognized in Colorado that with regard to professionals, a duty of reasonable care may arise despite the absence of an official relationship when there is a foreseeable risk of injury to a plaintiff from a defendant's failure to take protective action to prevent injury. *Palmer v. A.H. Robins Co., Inc.*, 684 P.2d 187, 209 (Colo.1984); *HealthONE v. Rodriguez ex rel. Rodriguez*, 50 P.3d 879, 888 (Colo. 2002).

Here, Kennedy and Coe held itself out as providing estate planning services. Ernest Cure and Plaintiff met with Jenkins in person. Jenkins advised Ernest Cure, individually, and also advised Ernest Cure and Mary Bohnen of acts they would need to do as officers of Cure, Inc. Further, Jenkins decided not to advise them concerning their fiduciary duties, as detailed above. It was breach of those very fiduciary duties that led to the judgment against Mary Bohnen and Ernest Cure. Under Defendants' analysis, Ernest Cure and Plaintiff were required to decide when to go somewhere else to obtain advice that might be legal advice in nature, even though this accounting firm offered those very estate planning services and even had attorneys on staff Jenkins could have consulted with. (Exhibit 3, Jenkins deposition, 51:15-25; 53:1-25; 54:1).

It would be reasonable for a jury to conclude that the error in Ernest Cure's 1995 Will was one that Jenkins should have detected if he had he read the Will. Despite knowing that Ernest Cure considered Jenkins his most trusted estate planning advisor, (Exhibit 3, Jenkins deposition, 61:16-19), and that his decision not to advise Mary Bohnen and Ernest Cure concerning their ongoing fiduciary duties hinged on the proper exercise of the correct power of appointment, Jenkins did not even read the Will. (Exhibit 3, Jenkins deposition, 41:15-25; 42:1-25; 43:1-25; 44:1-8). He explained to Ernest Cure what the Will contained without reading it. (Exhibit 3, Jenkins deposition, 65:19-25).

In addition to the estate planning activities, Jenkins advised Ernest Cure and Mary Bohnen as officers of Cure, Inc. to adopt a deferred compensation agreement for Ernest with provisions that would provide ongoing benefits for Inez. They took his advice and adopted this plan. The state court held that $15,000 that was paid to Inez pursuant to the plan Jenkins formulated breached Mary and Ernest's fiduciary duties to Mary's three sisters.

Kennedy and Coe also gave negligent accounting advice to Mary Bohnen and Ernest Cure as officers of Cure, Inc. about the operation of Cure, Inc. that also was the basis for the judgment against Mary Bohnen. Kennedy and Coe failed to determine that the fiduciary duties Mary Bohnen and Ernest Cure owed Mary's sisters prior to his 1995 will had not been extinguished and remained in place. Facts listed above show that Kennedy and Coe and Jenkins also provided negligent operational advice to Mary Bohnen and Ernest Cure as officers of Cure, Inc., and provided them with false information that perpetuated and aggravated their errors.

Only after Ernest Cure's death did Kennedy and Coe and Jenkins discover that the Family Trust remained a shareholder of Cure, Inc., that Mary's sisters had remained contingent beneficiaries of the Family Trust all along, and that Mary's sisters had been owed fiduciary duties all along. They also learned, only upon finally reading Ernest's Will, that because of Ernest's death, the sisters were now entitled to distribution of their respective shares of the stock in Cure, Inc. that had been held in the Family Trust all along and that Ernest Cure had repeatedly stated he wanted to go to Mary Bohnen only.

Kennedy and Coe were negligent and breached their duty of care to Mary Bohnen and Ernest Cure, both individually and as officers of Cure, Inc. As demonstrated above, they made false statements about the ownership of Cure, Inc. stock in tax returns they prepared for Cure, Inc. for many years, statements that perpetuated their original errors and caused or contributed to Mary Bohnen and Ernest Cure breaching fiduciary duties they did not know they still had as officers of Cure, Inc. and as trustees of the Eileen Rita Cure Family Trust.

This advice fell below the standard of care because Kennedy and Coe failed to exercise due care in the performance of professional services to their clients, Mary Bohnen and Ernest Cure, they

failed to adequately plan and supervise the performance of professional services, and failed to obtain sufficient relevant data to afford a reasonable basis for conclusions or recommendations in relation to the professional services performed.  (Exhibit 12, p. 8, items B, C and D).

Even though Mary Bohnen relied on this professional advice, the state court found that Mary Bohnen and Ernest Cure breached fiduciary duties they owed to Mary's sisters because good faith is no defense to the claim of breach of fiduciary duty.

**2.       Facts Exist That Show Defendants Provided Mary Bohnen With False Information and Negligently Rendered Advice To Guide Her In Numerous Business Transactions That Caused Her To Be Held Liable For Breaching Fiduciary Duties To Her Sisters.**

Even if Plaintiff was only a third party beneficiary of the accounting engagements the Defendants are still liable for her damages because they provided her with false information that Jenkins and Kennedy and Coe failed to use reasonable care in obtaining, information they obtained for the purpose of guiding her in business transactions.  As detailed above, Kennedy and Coe and Jenkins negligently advised Mary Bohnen as an officer of Cure, Inc. concerning numerous business transactions of Cure, Inc. following execution of Ernest Cure's 1995 Will.  Their advice caused her to be held liable for breach of fiduciary duties that she was not informed (by Kennedy and Coe) she still had..

The evidence also shows that Kennedy and Coe also repeatedly stated falsely in tax forms it prepared for Mary Bohnen or her father to sign on behalf of Cure, Inc. that Mary Bohnen and her father were the sole owners of the stock of Cure, Inc.   It is well established in Colorado that "a claim of negligent misrepresentation based on principles of tort law, independent of any principle

of contract law, may be available to a party to a contract." *Keller v. A.O. Smith Harvestore Prods.*, 819 P.2d 69, 72 (Colo.1991). Privity is not a necessary element of a claim for negligent misrepresentation. *Mehaffy, Rider, Windholz & Wilson v. Central Bank Denver, N.A.*, 892 P.2d 230, 235-236 (Colo. 1995). The Colorado Supreme Court has defined "negligent misrepresentation" according to section 552 of the Restatement (Second) of Torts (1977). *Id.*, at 236. Section 552(1) of the Restatement (Second) of Torts provides, in relevant part:

> One who, in the course of his business profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) of Torts §552(1).

To establish a claim for negligent misrepresentation, it must be shown that the defendant supplied false information to others in a business transaction, and failed to exercise reasonable care or competence in obtaining or communicating information on which other parties justifiably relied. *Mehaffy*, 892 P.2d at 236. Viewing the evidence in a light most favorable to the Plaintiff, Defendants provided false information to Plaintiff regarding the ownership of Cure, Inc. after Mr. Cure executed his Will and exercised the wrong power of appointment. The affidavit and report of James R. TenBrook makes clear that in doing so, Jenkins failed to exercise reasonable care or competence in obtaining or communicating the information he knew Plaintiff was relying on. The clearest example of such a failure by Jenkins is in his admission that he did not even bother to read the letter and documents sent to him by Mr. Reitz before Mr. Cure signed the Will.

"Professionals other than attorneys are subject to liability to third persons for negligent

misrepresentation in Colorado." *Mehaffy*, 892 P.2d at 236; *see, e.g., Messler v. Phillips*, 867 P.2d 128 (Colo.App.1993) (real estate broker who represented seller may be liable under negligent misrepresentation theory to purchaser of townhome even though broker did not formally contract to represent purchaser); *Marquest Medical Products, Inc. v. Daniel, McKee & Co.*, 791 P.2d 14 (Colo.App.1990) (implicitly recognizing liability of certified public accountants for negligent misrepresentation because accountants provided financial information about a client to a third person who relied on the representations to ship goods under a credit agreement); *Wolther v. Schaarschmidt*, 738 P.2d 25 (Colo.App.1986) (engineer retained by lender's appraiser to inspect home may be liable for negligent misrepresentation to borrower). A theory of negligent misrepresentation is proper where a professional knows that its representation will be relied upon by a non-client for business purposes. *Mehaffy*, 892 P.2d at 236.

Defendants seek to assign blame to the attorney who prepared the 2000 Will for Mr. Cure. The problem with this assertion, as identified by the Court at the Scheduling Conference, is that most of the damages assessed against Mary Bohnen were based on acts that predate the execution of Ernest Cure's 2000 Will.

### V.    CONCLUSION

Questions of fact exist on these matters that bar summary judgment. Plaintiff has endorsed an expert who will testify that many of the Defendants' acts and omissions were below the standard of care for persons in their profession. Those acts and omissions caused Plaintiff to suffer significant damages.

This Response demonstrates the correctness of the court's earlier decision at the Scheduling Conference when, after inquiring of counsel about the claims and their basis, the court decided that

fact questions exist that require trial.  Fact questions exist concerning what Jenkins did and for whom, whether he or his accounting firm breached promises made as part of an express contract, whether Mary Bohnen was a direct third party beneficiary of an express contract between Defendants and Ernest Cure or a party to the contract as an officer of Cure, Inc., or was owed duties by these accountants as their individual client, or perhaps several of the above.

Fact questions also exist whether other acts and omissions, namely, tax, operational advice and related services that Jenkins and Kennedy and Coe provided to Mary Bohnen as an officer of Cure, Inc., were negligent including their failure to adhere to the requirements of the AICPA as detailed in the report of Plaintiff's expert CPA, James TenBrook, and whether Kennedy and Coe's failure to advise their client, Mary Bohnen, of her ongoing fiduciary duties to her sisters in her acts as an officer of Cure, Inc. and trustee of the Eileen Rita Cure Family Trust were negligent and caused Plaintiff's damages.

WHEREFORE, Plaintiff requests that this Court deny this Motion for Summary Judgment.

Respectfully submitted this 4th day of June, 2009.

s/William R. Gray

William R. Gray, Reg. No. 1819
**PURVIS • GRAY, LLP**
4410 Arapahoe Avenue, Suite 200
Boulder, Colorado  80303
Ph:  (303) 442-3366
Fax: (303) 440-3688
E-mail: bgray@purvisgray.net
ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify, that on this 4th day of June, 2009, I served the foregoing **PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** via U.S. Mail, postage prepaid, and electronically by e-mail on the following:

Keith P. Ray
LATHROP & GAGE, L.C.
370 17th Street, Suite 4650
Denver, CO 80202-5607
kray@lathropgage.com

Timothy K. McNamara
J. Alison Auxter
LATHROP & GAGE, L.C.
2345 Grand Boulevard, Suite 2800
Kansas City, MO 64108
aauxter@lathropgage.com
tmcnamara@lathropgage.com


                                        s/Brenda J. O'Brien
                                        Brenda J. O'Brien, Paralegal
                                        PURVIS • GRAY, LLP
                                        E-mail: bobrien@purvisgray.net